## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| J. TIMOTHY SHELNUT, SR. and McCALLAR LAW FIRM, | § § § | Case No. 4:22-CV-141-RSB |
| Appellants, | § § | |
| v. | § § | Chapter 7 Case No. 17-40113-SDB |
| JAMES C. OVERSTREET, JR. and MARY IDA TOWNSON, | § § § | |
| Appellees. | § § | |

---

## BRIEF OF APPELLANTS

---

On appeal from an order entered May 16, 2022 by the United States Bankruptcy Court for the Southern District of Georgia, Savannah Division, in the captioned Chapter 7 Case No. 17-40113-SDB.

> C. James McCallar, Jr.
> Georgia Bar Number 481400
> Attorney for Appellants

McCallar Law Firm
Post Office Box 9026
Savannah, GA 31412
Tel: (912) 234-1215
Fax: (912) 236-7549
jmccallar@mccallarlawfirm.com

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………3

Statement of Jurisdiction……………………………………………………7

Statement of Issues………………………………………………………….7

Standard of Review…………………………………………………………8

Statement of the Case………………………………………………………8

Summary of Argument……………………………………………………14

Argument and Citation of Authority……………………………………14

Conclusion…………………………………………………………………24

Certificate as to Fed. R. Bankr. P. 9015………………………………25

Certificate of Service……………………………………………………26

# TABLE OF AUTHORITIES

## Federal Cases

*Cohen v. U.S.*,
  191 B.R. 482 (S.D. Fla. 1995)……………………………………………………..8

*Dewsnup v. Timm*,
  502 U.S. 410, 112 S.Ct. 773 (1992)……………………………………….….16

*Ex parte Christy*,
  44 U.S. 292 (1845)……………………………………………………………….. 17

*Freshman v. Atkins*,
  269 U.S. 121, 46 S.Ct. 41 (1925)……………………………………………….15

*Green Point Credit, LLC v. McLean*,
  794 F.3d 1313 (11th Cir. 2015)…………………………………………….......16

*In re BFW Liquidation, LLC*,
  459 B.R. 757 (Bankr. N.D. Ala. 2011)……………………………….….……19

*In re Boyd*,
  618 B.R. 133 (Bankr. D.S.C. 2020)……………………………………………....20

*In re Charter Co.*,
  862 F.2d 1500 (11th Cir. 1989)……………………………………………....…19

*In re Dewberry*,
  266 B.R. 916 (Bankr. S.D. Ga. 2001)……………………………………….…..20

*In re Dinova*,
  212 B.R. 437 (2d Cir. BAP 1997)……………………………………….…....…22

*In re Dixon*,
  49 F.Supp. 977 (S.D. Ga. 1943)…………………………………………….…......21

*In re Greensboro Lumber Co.*,

157 B.R. 921 (M.D. Ga. 1993)……………………………………….......9, 11

*In re Know Thy Self, Inc.*,
   2006 Bankr. LEXIS 1359 (Bankr. N.D. Ga. 2006)…………………………..…16

*In re Johnson*,
   2010 WL 3491187 (Bankr. N.D. Tex. 2010)………………………………...23

*In re Lamar Farmers Exchange*,
   76 B.R. 712 (Bankr. W.D. Mo. 1987)…………………………………………11

*In re Nguyen-Gassaway*,
   408 B.R. 869 (Bankr. S.D. Tex. 2009)……………………………………….23

*In re Sanchez-Dobazo*,
   343 B.R. 742 (Bankr. S.D. Fla. 2006)…………………………………..........15

*In re Saylors*,
   869 F.2d 1434 (11th Cir. 1989)………………………………………………15

*In re Sorenson*,
   575 B.R. 527 (Bankr. D. Colo. 2017)………………………………………..…15

*In re Spiwak*,
   285 B.R. 744 (S.D. Fla. 2002)……………………………………………..…8

*In re Tannen Towers Acquisition Corp.*,
   235 B.R. 748 (D.N.J. 1999)…………………………………………………......18

*In re Upshur*,
   317 B.R. 446 (Bankr. N.D. Ga. 2004)……………………………………….……22

*In re Yonikus*,
   996 F.2d 866 (7th Cir. 1993)…………………………………………….....……..15

*Katchen v. Landy*,
   382 U.S. 323, 86 S.Ct. 467 (1966)……………………………………..............18, 19

*Law v. Siegel*,
   571 U.S. 415, 134 S.Ct. 1188 (2014)…………………………………………..15

*Matter of Mills*,
4 B.R. 429 (S.D. Ga. 1978)………………………………………………...…19

*Matter of Painter*,
21 B.R. 846 (Bankr. M.D. Ga. 1982)…………………………………..…22

*Matter of Richmond*,
29 B.R. 555 (Bankr. M.D. Fla. 1983)…………………………………….…18

*Matter of Robintech, Inc.*,
863 F.2d 393 (5th Cir. 1989)…………………………………………….…..18

*Mohorne v. Beal Bank, S.S.B.*,
419 B.R. 488 (S.D. Fla. 2009)……………………………………………….8, 20

*Reid v. Richardson*,
304 F.2d 351 (4th Cir. 1962)………………………………………………...21

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
140 S.Ct. 582 (2020)……………………………………………………….…7

*Riggins v. Ambrose*,
500 B.R. 190 (N.D. Ga. 2013)…………………………………………….…22

*Segal v. Rochelle*,
382 U.S. 375 (1966)……………………………………………………….......15

*Texas Comptroller of Public Accounts v. Zars (In re Zars)*,
434 B.R. 421 (W.D. Tex. 2010)………………………………………………...19

*Walston v. PYOD, LLC*,
606 Fed.Appx. 543 (11th Cir. 2015)………………………………………......19

*Wilk Auslander LLP v. Murray (In re Murray)*,
565 B.R. 527 (S.D.N.Y. 2017)……………………………………………......22

*Zimmerman v. Continental Airlines, Inc.*,
712 F.2d 55 (3d Cir. 1983)………………………………………………..……17

5

## Federal Statutes

11 U.S.C. § 350…………………………………………………………………20, 21

11 U.S.C. § 541………………………………………………13, 14, 15, 16, 17

11 U.S.C. § 554………………………………………………………………….13

28 U.S.C. § 157…………………………………………………………………..7

28 U.S.C. § 158…………………………………………………………………..7

## Federal Rules

Fed. R. Bankr. P. 8015………………………………………………………….25

## Other Authorities

2 Norton Bankr. L. & Prac. 3d § 40:4 (2022)………………………………...22

3 Nonprofit Organizations: Law and Taxation § 22:7 (2022)………………...9

Brian Walsh, "Now That We Found Assets, What Are We Going To Do With Them?", *JDSupra*, August 26, 2021, https://www.jdsupra.com/legalnews/now-that-we-found-assets-what-are-we-3162411/....................................................21

## STATEMENT OF JURISDICTION

The Bankruptcy Court had jurisdiction over this matter as a core proceeding under 28 U.S.C. § 157(b)(1). Appeal from the Bankruptcy Court's Order ("Order") was timely filed on May 30, 2022.

This appeal is from a final judgment of the Bankruptcy Court, as that Order "definitively dispose[s] of [the] discrete dispute[ ]" concerning the proper allocation of an asset in a bankruptcy estate. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, ___ U.S. ___, 140 S.Ct. 582, 586 (2020). The District Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

## STATEMENT OF ISSUES

1. Whether the Bankruptcy Court clearly erred in holding that the AgGeorgia patronage payments at issue were assets belonging to Debtor Timothy Shelnut's discharged 2008 Bankruptcy Estate (Case No. 08-11067-SDB), when those payments should be disbursed in Debtor Timothy Shelnut's open 2017 bankruptcy estate (Case No. 17-40113-SDB)?

2. Whether the Bankruptcy Court clearly erred in reopening the 2008 Bankruptcy Estate (Case No. 08-11067-SDB) to administer the AgGeorgia patronage payments,

when those payments should have been administered in the 2017 bankruptcy estate (Case No. 17- 40113-SDB)?

## STANDARD OF REVIEW

"The Bankruptcy Court's factual findings are subject to review under a clearly erroneous standard by the District Court." *In re Spiwak*, 285 B.R. 744, 751 (S.D. Fla. 2002). A "bankruptcy court's conclusions of law and conclusions regarding the legal significance accorded to the facts are subject to de novo review" by a District Court. *Cohen v. U.S.*, 191 B.R. 482, 484 (S.D. Fla. 1995). "Further, mixed issues of law and fact and 'ultimate facts' are all subject to *de novo* review." *Mohorne v. Beal Bank, S.S.B.*, 419 B.R. 488, 492 (S.D. Fla. 2009).

## STATEMENT OF THE CASE

On June 3, 2008, Mr. Shelnut ("Debtor") filed a Chapter 7 bankruptcy (Bankr. No. 08-11067; "2008 estate"). That case was discharged on February 25, 2009 (R-339-358).[1]

On January 24, 2017, Debtor filed a Chapter 11 bankruptcy (Bankr. No. 17-40113; "2017 estate") (R-35-48). Attorneys C. James McCallar, Jr. and Tiffany E. Caron represented Debtor collectively as McCallar Law Firm by order dated February 2, 2017 (R-49). James Overstreet ("Trustee") was appointed as

---

[1] All citations to the Record are designated as (R-___).

Trustee by order dated May 19, 2017 (R-121).[2] That case was subsequently converted to a Chapter 7 bankruptcy by order dated October 28, 2019 (R-147). McCallar Law Firm filed a Proof of Claim in the 2017 case on December 17, 2019 (R-324-338).

### Trustee's Motion

On March 23, 2022, the Trustee filed a "Motion and Notice for Leave to Administer Property" ("Motion"; R-174-186). Trustee had "received a check made payable to Debtor and Shelnut Properties, Ltd. from AgGeorgia [Farm Credit ACA, a federally-chartered credit union] in the amount of $78,590.77 with a notation that such payment was for 'patronage payment'" (R-177).[3] These patronage payments dated from 2005, prior to Debtor's first bankruptcy.[4]

In his Motion, the Trustee describes the history of the AgGeorgia payments. "Prior to the [2008 bankruptcy], Debtor and Debtor's wholly owned and controlled entity, Shelnut Properties, Ltd., were indebted to AgGeorgia Farm Credit ACA

---

[2] Trustee "presently serve[s] as a Chapter 7 panel trustee, the standing Chapter 12 Trustee, and Subchapter V Trustee for the United States Bankruptcy Court for the Southern District of Georgia. [He] has previously served as a Chapter 11 Trustee for the United States Bankruptcy Court for the Southern District of Georgia" (R-200). Additionally, Trustee has "served as Chair at the Bankruptcy Lawyers Advisory Committee for the Southern District of Georgia" since 2012. *Id.*

[3] Patronage payments are defined, in this context, as "excess revenues generated by a [nonprofit organization's] operations" which are paid into a "capital account … and are allocated to each patron [of the nonprofit organization]." *Greensboro Lumber Co., infra,* 157 B.R. at 922. See also, 3 Nonprofit Organizations: Law and Taxation § 22:7 (2022) (discussing patronage dividends and how they function to benefit a nonprofit's shareholders).

[4] Additional context regarding the history of the patronage payments can be found in the Transcript for the Hearing on the Motion ("Transcript"; citations to Transcript designated as T-___) (T-5-11).

("AgGeorgia") pursuant to a promissory note and deed to secure debt in the original principal amount of $4,766,000.00. Said obligation was secured by, among other things, a certain parcel (or parcels) of land located in Burke County, Georgia comprised of some 637.58 acres (more or less) ("Property")..." (R-174).

"On or about June 1, 2007 (and just prior to the [2008 bankruptcy]), Debtor and Shelnut Properties, Ltd. conveyed all of their interests in Property to AgGeorgia in lieu of a foreclosure of AgGeorgia's rights to foreclose such property in accordance with the Security Deed ... As a result of [the] Deed in Lieu, all of Debtor's and Shelnut Properties, Ltd.['s] ... in personam obligations to AgGeorgia were extinguished" (R-175).

The Trustee notes that, as AgGeorgia is a credit union, "borrowers of funds from AgGeorgia must be a 'member' or 'shareholder' of AgGeorgia," which Debtor and Shelnut Properties were until June 1, 2007. *Id.* The Trustee then states that, "[p]ursuant to the By-Laws of AgGeorgia ... all members/shareholders are entitled to accrue patronage 'credits' for every year that such member/shareholder has a loan outstanding to AgGeorgia ... Such patronage credits are designed to act as 'dividends' to shareholders." *Id.*

Pursuant to federal law and the by-laws of AgGeorgia, "the accrual of such credits is a right of such member/shareholder, and while AgGeorgia has an obligation to liquidate such credits to the member/shareholder, it is with the **absolute**

**discretion of the Board of Directors as to when such credits are monetized and actually paid over to such member/shareholder**" (R-175, 177) (emphasis added).[5]

Citing *In re Greensboro Lumber Co.*, 157 B.R. 921 (M.D. Ga. 1993), the Trustee then explains "[c]ourts have held that while the unliquidated patronage credits which a Title 11 debtor may hold as of the date of a Title 11 proceeding are property of that Title 11 Estate, the rights to payment of those credits are **so indefinite**, a right to payment **does not become vested in the Debtor unless and until the Board of Directors votes to actually pay them**" (R-177) (emphasis added).

The Trustee then provides a breakdown of the years each patronage credit accrued, which, in this case, were all in 2005 and/or 2006.[6] However, as he notes, these payments were not approved by the AgGeorgia Board of Directors until 2016. *Id.* To that end, "Trustee asserts and believes that Payment is **property of the instant Chapter 7 Estate** and is due to be administered as part of the instant Chapter 7

---

[5] See also, *In re Lamar Farmers Exchange*, 76 B.R. 712, 716 (Bankr. W.D. Mo. 1987) (noting that patronage payments are "**contingent** and not immediately payable. The [patronage payments] become[ ] due and payable **only** when the board of directors, in keeping with its bylaws, **exercises its discretion and determines that such payments may be made** without causing undue financial hardship to the association") (emphasis added).

[6] The patronage payments were apparently combined into one full check sent to the Trustee, but comprise four distinct patron payments, which are: (i) a patron payment for $16,370.26 accrued in 2006 and approved for payment by the Board of Directors in November 2016; (ii) a patron payment for $11,608.02 accrued in 2006 and approved for payment by the Board of Directors in November 2016; (iii) a patron payment for $38,139.25 accrued in 2005 and 2006 and approved for payment by the Board of Directors in June 2016; and (iv) a patron payment for $12,473.24 accrued in 2005 and approved for payment by the Board of Directors in June 2016 (R-177).

Estate." *Id.* (emphasis added). Though the Trustee conceded that payment of the patronage credits was "somewhat of a derivative function of [a contingent] obligation that existed prior to the filling of the Debtor's previous 2007 Chapter 7 case, Debtor's rights to receive such payment did not vest until November 2016 and June 2016, **after the filing of the previous 2007 case and such rights to receive such payments existed as of the filing of the instant 2017 case**" (R-177, 179) (emphasis added).

Because "Debtor's ownership interest in Shelnut Properties, Ltd. was property of the instant Chapter 7 Estate[,]" "[i]nsomuch as a portion of Payment is property of Shelnut Properties Ltd., such Portion was … an asset of Shelnut Properties, Ltd. … and [is] due to be distributed to the Debtor, as principal as of the date of the filing of the instant Chapter 7 case." (R-179). Accordingly, Trustee asked the Bankruptcy Court to "issue a finding that [the patronage payments are] property of the instant Chapter 7 Estate, subject to the claims of no other, and due to be administered as part of the instant Chapter 7 estate[.]" *Id.*

## May 12, 2022 Hearing on the Motion

The Bankruptcy Court conducted a telephonic hearing on the Motion on May 12, 2022 (T-1).

At the hearing on the Motion, Trustee reiterated his position that the patronage payments were part of the 2017 estate, but also surmised that one could reasonably

12

interpret the assets as belonging to the 2008 estate (T-5). He did note, however, that for the 2008 estate to receive the asset, "the trustee in that case[ ] would essentially have had to hold the [2008 estate] open for some 10 years," due to the requirement that the Board of Directors for AgGeorgia approve the release of those funds to Debtor at a belated time (T-9). The Trustee also noted that, with the patronage payments remaining in the 2017 estate, those funds would "just about" pay off the debts of Ms. Virginia Pannill, Debtor's ex-wife and a major creditor in the 2017 estate (T-17).

Mr. Joel Paschke, Attorney for the U.S. Trustee, argued that the patronage payments were property of the 2008 estate, though the payments were **not** listed on the 2008 bankruptcy estate schedules and thus were "not abandoned [back to Debtor,] ... remain[ed] property of the [2008] estate even after case closure ... and [were] subject to administration [in] the 2008 estate[,]" based upon his reading of 11 U.S.C. §§ 541 and 554 (T-14, 15).

The Bankruptcy Court concurred with Mr. Paschke (T-20, 22), and entered an Order stating that "the patronage payment at issue in the amount of $78,590.77 is property of the [2008 estate]" (R-194). That Order likewise reopened the 2008 estate, directing the appointment of a trustee in the 2008 estate, and ordered Trustee to pay the funds from the patronage payments to the newly appointed trustee for the 2008 estate. *Id*.

Debtor and McCallar Law Firm ("Appellants") timely filed a Joint Appeal of the Order on May 30, 2022 (R-196-199). In accordance with the Order, Trustee "transferred the funds from the AgGeorgia payments to a newly-appointed trustee in [the newly reopened 2008 estate]" (R-201).

## SUMMARY OF ARGUMENT

The patronage payments cannot conceivably be the property of the 2008 estate, as these payments were not available to Debtor until 2016, seven (7) years after his first bankruptcy was discharged. In the interests of judicial economy and achieving the bankruptcy code's goals of providing the debtor with a fresh-start and affording immediate financial relief to current creditors, this Court should find the patronage payments at issue are assets to be administered in the 2017 estate and reverse the Order reopening the 2008 estate.

## ARGUMENT AND CITATION OF AUTHORITY

**I.** **The Bankruptcy Court clearly erred by finding that the assets were property of the 2008 estate and not the 2017 estate, as precedent favors swift administration of bankruptcy estates and no precedent requires a finding that the patronage payments at issue cannot be administered in the pending 2017 estate.**

The Bankruptcy Code states that property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Contingent interests like patronage payments are part of a debtor's bankruptcy estate under 11 U.S.C. § 541(a). "[E]very conceivable

14

interest of the debtor, future, nonpossesssory, contingent, speculative and derivative, is [property of the estate] within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415, 134 S.Ct. 1188 (2014).

Under the single estate rule, first promulgated by the Supreme Court in *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41 (1925), "the same property cannot simultaneously be property of two different bankruptcy estates." *In re Sorenson*, 575 B.R. 527, 531 (Bankr. D. Colo. 2017).[7] Thus, in the instant case, there appears to be a binary choice faced by this Court: it must **either** find that the patronage payments are assets of the 2008 estate **or** that the payments are assets of the 2017 estate.

The Supreme Court, in interpreting the term "property" in an earlier version of the Bankruptcy Code, stated that "the term 'property' has been construed most generously[,] and an interest is not outside [the] reach [of 11 U.S.C. § 541] because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511 (1966). As previously mentioned, the patronage payments are certainly a part of one of Debtor's bankruptcy estates as a

---

[7] In *In re Sanchez-Dobazo*, 343 B.R. 742 (Bankr. S.D. Fla. 2006), the United States Bankruptcy Court for the Southern District of Florida recognized two "flavors" of the single estate rule: a "strong" version that would bar simultaneous filings of bankruptcy; and a "milder" version that would only "bar[ ] a particular piece of property from being an asset of multiple bankruptcy estates simultaneously." *Id.* at 744, 745. That court held the "strong" version of the single estate rule had been implicitly rejected in *In re Saylors*, 869 F.2d 1434, 1437 (11th Cir. 1989). *Sanchez-Dobazo*, 343 B.R. at 744.

contingent asset under 11 U.S.C. § 541. Appellants contend the patronage payments should be construed as assets of the 2017 estate, rather than the 2008 estate.

First, the assets were not available to the Debtor until **2016**, well after his 2008 bankruptcy had been discharged. The 2008 estate would have had to stay open for **another 8 years** to wait for AgGeorgia's Board of Directors to approve the patronage payments.[8] To that end, it would be illogical to keep a bankruptcy estate open for decades in the hope that the estate will be able to perhaps obtain a future interest at some unforeseen time to pay off creditors.

Second, the 2008 bankruptcy estate was discharged in 2009 (R-187). "[A] discharge is final: it marks the end of adjudication of claims against a bankruptcy estate." *Green Point Credit, LLC v. McLean*, 794 F.3d 1313, 1322 (11th Cir. 2015). The Supreme Court has advised that "if possible, [courts] should avoid construing [a] statute in a way that produces … absurd results." *Dewsnup v. Timm*, 502 U.S. 410, 427, 112 S.Ct. 773 (1992). Since the fundamental purpose of bankruptcy is to "discharge or rearrange and restate debt and other debtor-creditor rights[,]" reopening a previous bankruptcy of a debtor to administer an asset while that bankruptcy debtor has a live and pending case would lead to absurd results. *In re Know Thy Self, Inc.*, 2006 Bankr. LEXIS 1359 at *14 (Bankr. N.D. Ga. 2006).

---

[8] The Trustee implies that disbursement of accrued funds from the patronage payments was dependent upon the financial condition of AgGeorgia, as he presumes those were approved in that year because the Board of Directors of AgGeorgia "decided that [Debtor's account] had enough cash to pay out some credits which the [the Debtor's account] accrued for years past" (T-8).

By upholding the Order in this case and applying the narrowest reading of 11 U.S.C. § 541(a) possible, this Court would set a precedent that the discovery of a newly realized, contingent asset from **any time in the past** is grounds for reopening a debtor's prior bankruptcy, irrespective of whether that asset can be more properly administered in a current estate for that very same debtor. Indeed, affirming the reopening of Shelnut's prior case could conceivably subvert the purpose of Congress's creation of a Bankruptcy Code, which has been recognized by the Supreme Court for over 175 years as an "obvious design … to secure a **prompt and effectual administration and settlement of the estate** of all bankrupts **within a limited period**." *Ex parte Christy*, 44 U.S. 292, 312 (1845) (emphasis added).

In *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3d Cir. 1983), the Third Circuit expounded upon why quick administration of assets was so important within bankruptcy.

> While the reduction of unnecessary delays, expenses, and duplications of effort are important in all judicial proceedings, they are especially important in bankruptcy cases. The economic fragility of the bankrupt's estate, the excess of creditors' demands over debtors' assets, and the goal of rehabilitating the debtor all argue for expeditious resolution of the bankruptcy proceeding.

*Id.* at 58.

None of the factors listed by the Third Circuit would be fulfilled by permitting the reopening of a debtor's prior, discharged bankruptcy to administer an asset, when, of course, that asset could be far more easily and efficiently administered in

17

that debtor's pending bankruptcy. Such a result would be absurd, create unnecessary administrative costs, and undermine the "primary purpose of bankruptcy law[,] … to relieve the debtor's burden of indebtedness and to provide him with a fresh start." *Matter of Richmond*, 29 B.R. 555, 558 (Bankr. M.D. Fla. 1983). See also, *Matter of Robintech, Inc.*, 863 F.2d 393, 397-98 (5th Cir. 1989) (stating "[t]he purpose of bankruptcy laws is [to] quickly and effectively … settle bankrupt estates); *In re Tannen Towers Acquisition Corp.*, 235 B.R. 748, 754 (D.N.J. 1999) (noting that"[o]ne of the principal purposes of a bankruptcy proceeding is to quickly and efficiently settle the debtor's estate"); *Katchen v. Landy*, 382 U.S. 323, 328-29, 86 S.Ct. 467 (1966) (noting when Congress revised bankruptcy laws in 1898 and 1938, "it gave 'special attention to the subject of making [the bankruptcy laws] inexpensive in [their] administration'").

Appellants found little case law pertaining to an instance where a Bankruptcy Court had to choose between reopening a prior, discharged bankruptcy estate of the a debtor to administer a contingent asset and keeping that asset in that same debtor's pending and active bankruptcy. However, when dealing with competing claims in a prior bankruptcy against current bankruptcy estates, courts tend to prioritize settling a live estate over a past, discharged estate.

In the context of payment of attorney's fees in a prior bankruptcy involving the same debtor who filed a later bankruptcy, the United States District Court for the

18

Western District of Texas noted that "[t]he payment of attorney's fees incurred in a previous bankruptcy claim from the estate of a new bankruptcy claim fails to accomplish the Bankruptcy Code's goals of preserving the *current* estate and achieving creditor equality." *Texas Comptroller of Public Accounts v. Zars (In re Zars)*, 434 B.R. 421, 430-31 (W.D. Tex. 2010) (emphasis in original).

The Eleventh Circuit has noted that "[t]he Bankruptcy Code provides streamlined and summary procedures 'to secure a prompt and effectual administration and settlement of the estate' of a debtor." *Walston v. PYOD, LLC*, 606 Fed.Appx. 543, 547 (11th Cir. 2015), citing *Katchen*, *supra*, 382 U.S. at 328-29 (1966). See also *Matter of Mills*, 4 B.R. 429, 431 (S.D. Ga. 1978) (noting "[o]ne of the goals of the Bankruptcy Act is to achieve an expeditious administration of the bankrupt's estate"). The Eleventh Circuit has also held that another goal of bankruptcy should be to "expeditiously rehabilitate [ ] and reorganize[ ]" the debtor, "thereby providing the bankrupt a fresh start, while simultaneously according fair treatment to creditors by paying ascertainable claims as quickly as possible." *In re Charter Co.*, 862 F.2d 1500, 1502 (11th Cir. 1989).

Courts have often employed the principle of judicial economy when dealing with bankruptcy disputes, as "judicial economy is an important consideration in the resolution of … jurisdictional and procedural issues which arise in bankruptcy cases." *In re BFW Liquidation, LLC*, 459 B.R. 757, 787 (Bankr. N.D. Ala. 2011). In

that light, reopening a discharged, decade-old bankruptcy to administer an asset while Debtor has an open, unpaid bankruptcy estate seems to undermine those principles.

**II.    The Bankruptcy Court clearly erred in reopening the 2008 estate, as that decision unnecessarily creates administrative costs and expenses which could be avoided by administering those assets in the pending 2017 estate.**

The Bankruptcy Code notes that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "In determining whether to reopen a bankruptcy case, one factor a court should consider is how long the case has been closed." *Mohorne*, *supra*, 419 B.R. at 493. Where a trustee has not acted in bad faith, "the test for reopening to administer assets is simply whether the **administrative expense** and **inconvenience** outweighs the potential benefit to the estate." *In re Dewberry*, 266 B.R. 916, 921 (Bankr. S.D. Ga. 2001) (emphasis added). Other factors to be considered when deciding whether to reopen a bankruptcy estate include "permitt[ing] the administration of an asset and accounting of property of the estate … [and] accord[ing] relief to the debtor" [*In re Boyd*, 618 B.R. 133, 165, 166 (Bankr. D.S.C. 2020)], "[l]aches …. [and] the time, trouble and expense of re-opening in

case of a small claim." *In re Dixon*, 49 F.Supp. 977, 979 (S.D. Ga. 1943).[9] By

reopening the 2008 estate, the Bankruptcy Court needlessly created expenses and

inconveniences that would be obviated by administering the patronage payments in

the 2017 estate.

While 11 U.S.C. § 350(b) does give bankruptcy courts some latitude to reopen

former estates, the Fourth Circuit has advised bankruptcy courts do so with caution,

with the factor of time being of "crucial significance":

> [R]e-opening defeats one of the major purposes of the Bankruptcy Act;
> to stabilize an insolvent debtor's financial position at the time of the
> filing of the petition, to relieve him of his existing financial burdens,
> and to provide his then assets for the relief of his creditors. Re-opening
> removes the element of certainty from the adjudication of and
> settlement of the estates. It is as essential to the creditors as it is
> desirable to the bankrupt that this element of certainty only be destroyed
> for **the most compelling cause**. Accordingly[,] as the time between
> closing of the estate and its re-opening increases, so must also the cause
> for re-opening increase in weight.

*Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962) (emphasis added). Applying

that principle to the instant case, it does not appear that reopening the 2008 estate to

administer the funds from the patronage payments is "the most compelling cause"

to destroy the certainty of a closed bankruptcy when those funds can be administered

in a pending estate. *Id.*

---

[9] For a general overview of how bankruptcy courts administer newly found assets, see Brian Walsh, "Now That We Found Assets, What Are We Going To Do With Them?", *JDSupra*, August 26, 2021, https://www.jdsupra.com/legalnews/now-that-we-found-assets-what-are-we-3162411/.

"Bankruptcy courts in this district emphasize that when the motion to reopen is to add an asset, the most important consideration is the benefit to the creditors." *Riggins v. Ambrose*, 500 B.R. 190, 195 (N.D. Ga. 2013); see also *In re Upshur*, 317 B.R. 446, 450 (Bankr. N.D. Ga. 2004) (same). Appellants acknowledge the creditors in the 2008 estate will benefit from the Order reopening the old estate and disbursing funds from the patronage payments to those creditors. Unfortunately, by such action, creditors in the **current** bankruptcy estate will have their interests impaired and prejudiced, denying a quicker reimbursement for more immediate debts that they are owed.

"Generally, the best interest of the debtor is in 'securing an effective fresh start and in the reduction of administrative expenses leaving him with resources to work out his debts.'" *Wilk Auslander LLP v. Murray (In re Murray)*, 565 B.R. 527, 533 (S.D.N.Y. 2017), citing *In re Dinova*, 212 B.R. 437, 441 (2d Cir. BAP 1997). See also, 2 Norton Bankr. L. & Prac. 3d § 40:4 (2022) (noting that "time and expense of administration may outweigh the benefit of the unadministered assets and justify refusal to reopen"). From the perspective of a bankruptcy debtor, reopening an old estate to administer an asset to the detriment of a current estate would certainly impede "the fresh start objective of the Bankruptcy Code." *Matter of Painter*, 21 B.R. 846, 848. (Bankr. M.D. Ga. 1982).

While it is true that "there is no more compelling reason to reopen a bankruptcy case than to insure that the debtor's creditors are paid," such reopening is unnecessary and superfluous where a debtor has a **live** bankruptcy with immediate unpaid creditors. *In re Johnson*, 2010 WL 3491187 at *10-11 (Bankr. N.D. Tex. 2010). By preventing Debtor's creditors in the 2017 estate to be paid out with funds from the patronage payments, the Bankruptcy Court has, inadvertently, created a situation in which the current estate will take longer to be closed. As noted in the Trustee's Affidavit, Debtor's ex-wife Virginia Pannill is a major creditor who is still receiving monthly payments (R-200-201). The funds from the patronage payments could, obviously, go to pay out much of the remainder of her claim in a shorter time (see, R-152-162).[10]

As a matter of judicial precedent, it seems unwise to encourage bankruptcy courts to reopen old cases to administer funds when they can immediately be applied in pending bankruptcy estates. In turn, administering newly-received or actualized assets in current estates over old estates will more quickly fulfill the claims of creditors and allow a debtor to obtain a fresh start, which are "[t]**he twin goals of bankruptcy**." *In re Nguyen-Gassaway*, 408 B.R. 869, 870 (Bankr. S.D. Tex. 2009) (emphasis added). To achieve these goals, this Court should reject setting the precedent that a discharged bankruptcy estate should be reopened to administer an

---

[10] The entirety of Ms. Pannill's claim can be seen at R-216-323.

asset of a debtor when the asset can be disbursed in a pending bankruptcy estate. These funds will be able to be allocated much more quickly in the current estate rather than a **14-year old estate**, wherein the Bankruptcy Court will have to determine who and where those former creditors are.

## CONCLUSION

WHEREFORE, Appellants respectfully request this Court reverse the decision of the Bankruptcy Court and find that the patronage payments are assets of the 2017 estate, revert the funds from the patronage payments to the 2017 estate, and order the 2008 estate to be closed again.

This 7th day of August, 2022.

C. James McCallar, Jr.
Attorney for Appellants
Georgia Bar Number 481400

## CERTIFICATE OF FED. R. BANKR. P. 8015

I hereby certify that in compliance with Fed. R. Bankr. P. 8015 this "Brief of Appellants" was prepared with Times New Roman (14 point) type, with margins of one (1) inch.

This document does not exceed the type-volume set by Fed. R. Bankr. P. 8015(a)(7)(A) of the Federal Rules of Bankruptcy Procedure.

This document does not exceed 13,000 words, excluding the items permitted to be excused from the length limit by Fed. R. Bankr. P. 8015(g). Excluding those items, the brief is less than 30 pages and the word count is 4,447 words.

This 7th day of August, 2022.

C. James McCallar, Jr.
Attorney for Appellants
Georgia Bar Number 481400

McCallar Law Firm
Post Office Box 9026
Savannah, GA 31412
Tel: (912) 234-1215
Fax: (912) 236-7549
jmccallar@mccallarlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing "Brief of Appellants" by electronic service or by placing a true and accurate copy of same in the United States mail with adequate postage thereon to assure delivery address to:

Lindsay P. S. Kolba, Trial Attorney
lindsay.p.kolba@usdoj.gov

James C. Overstreet, Jr., Trustee
jco@klosinski.com

This 7th day of August, 2022.

C. James McCallar, Jr.
Attorney for Appellants
Georgia Bar Number 481400

McCallar Law Firm
Post Office Box 9026
Savannah, GA 31412
Tel: (912) 234-1215
Fax: (912) 236-7549
jmccallar@mccallarlawfirm.com